IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 18-cr-00475-WYD

UNITED STATES OF AMERICA

        Plaintiff,

v.

1.    **Mary Aronson**

        Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Suneeta Hazra and Garreth Winstead, Assistant United States Attorneys for the District of Colorado, and the defendant, Mary Aronson, personally and by counsel, Jon Banashek, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

## I.  AGREEMENT

### A.    Defendant's Plea of Guilty

The defendant agrees to waive her right to be charged by indictment, and plead guilty to a criminal information charging a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), illegal distribution of a controlled substance.  The defendant further agrees to: i) waive her appellate rights as set forth in detail below; ii) timely file a notice of disposition; iii) withhold filing any pretrial motions; iv) pay restitution as outlined below; and v) permanently relinquish her pharmacy licenses from the State of Colorado and provide proof of such to the Court at sentencing.

COURT EXHIBIT

I

18-cr-00475

**B.     Government's Obligations**

In consideration of this plea agreement, if the United States Attorney=s Office for the District of Colorado determines, in its sole discretion, that the defendant has complied with the terms of this agreement, the Government after sentencing, will dismiss the Indictment as to this defendant.

In return for the defendant's timely filing of a notice of disposition, the Government agrees to request that the defendant receive a three-level decrease for timely acceptance of responsibility pursuant to United States Sentencing Guideline Section 3E1.1 (a).

The Government agrees that it will seek a sentence within the guideline range as calculated by the Court.

**C.     Cooperation**

The defendant agrees to provide truthful, complete and accurate information, and agrees to cooperate fully with the government. The defendant understands that if she provides untruthful information, or falsely testifies, she is in breach of this Plea Agreement, and the government reserves the right to prosecute her for Perjury, to withdraw its agreement in this case, and to bring any additional charges, including those that the government agreed to dismiss, or not bring, in connection with this plea agreement. *See Ricketts v. Adamson*, 483 U.S. 1, 9-12 (1987) (agreement void and government permitted to reinstate original charges when defendant failed to completely fulfill his obligations pursuant to the plea agreement).

The defendant's cooperation will include, but is not limited to, the following:

2

i.      The defendant agrees to be fully debriefed, and to attend all meetings at which her presence is requested, concerning her participation in and knowledge of all criminal activities.

ii.     The defendant agrees to furnish to the government all documents and other material that may be relevant to the investigation and that are in the defendant's possession or control.

iii.    The defendant agrees to testify fully and truthfully at any proceeding in the District of Colorado or elsewhere as requested by the government.

iv.    The defendant agrees that she will at all times give complete, truthful and accurate information and testimony and that she will fully and truthfully disclose all information with respect to the activities of himself and others concerning all matters about which the government inquires.

v.     The defendant consents to postponements of her sentencing, as requested by the government and as approved by the Court. Should the defendant be required to provide testimony at a time subsequent to her sentencing in this case and should the defendant fail, later, to comply with the obligation to testify, the government could seek to re-charge her on any and all counts which were dismissed as part of this Plea Agreement.

It is understood that the government's determination of whether the defendant has cooperated fully and provided substantial assistance, and the government's assessment of the value, truthfulness, completeness and accuracy of the cooperation, are within the government's sole discretion. Based on the defendant's cooperation, and assuming no subsequent breach of this agreement, the government agrees not to bring additional charges based on other conduct currently known to the government concerning the defendant's dispensing practices. The parties agree that this charge bargain adequately reflects the assistance provided by the defendant to the government and the future assistance contemplated by this agreement.

**D.**   **Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. ' 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined.   Understanding this and in exchange for the concessions made by the Government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria:   (1) the sentence exceeds the maximum penalty provided in the statute of conviction, (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 13 or (3) the government appeals the sentence imposed.   If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. ' 2255).   This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel, or (3) the defendant was prejudiced by prosecutorial misconduct.

Additionally, if the government appeals the sentence imposed by the Court, the defendant is released from this waiver provision.

**E.     Forfeiture:**

The defendant agrees to forfeit to the United States immediately and voluntarily any and all proceeds and property traceable thereto, subject to forfeiture, pursuant to 21 U.S.C. § 853.  The defendant agrees that the amount of proceeds obtained by her from the offense of conviction is $20,000.00.  The defendant also agrees that these proceeds are unavailable for forfeiture because they have been spent or dissipated.  Accordingly, the defendant consents to the entry of a forfeiture money judgment in the amount of $20,000.00, representing the proceeds obtained by the defendant in this case.

**F.     Restitution**

The defendant further agrees to the entry of a community restitution order in the amount of $55,000.00, pursuant to 18 U.S.C. § 3663(c).  The parties agree that, taking into consideration the amount of public harm caused by the offense and other relevant factors, that a community restitution in the amount of $55,000.00 is appropriate and should be distributed in accordance with 18 U.S.C. §  3663(c)(3).

## II. ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of the offense[s] to which this plea is being tendered are as follows:

a.     The defendant knowingly or intentionally distributed or dispensed controlled substances as charged;

b.     In doing so, the defendant acted and intended to act without a legitimate medical purpose and outside the usual course of professional practice;

b.     The substances were in fact Oxycodone and Amphetamine/ Dextroamphetamine.

### III.  STATUTORY PENALTIES

The maximum statutory penalty for a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) is:  not more than 20 years imprisonment; not more than a $1,000,000 fine, or both; not less than three years of supervised release, nor more than a life term of supervised release, and a $100 special assessment fee.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

### IV.  COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

### V.  STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense[s] of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. §3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have

stipulated and which are relevant to the Court's guideline computations, to other 18

U.S.C. §3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began is the summer

of 2016.

The parties agree as follows:  The defendant is a Registered Pharmacist who

owns and operates St. Vrain pharmacy in Lyons, Colorado.  On November 28, 2017,

law enforcement agents spoke with a confidential informant ("CI") who said that the CI

has been purchasing OxyContin pills from the defendant for over a year and a half, and

that she paid $1 per pill.  The generic name for OxyContin is Oxycodone.

On December 5, 2017, law enforcement conducted a controlled purchase from

the defendant using the CI.  Before the transaction, the CI was searched, and agents

placed an audio recording device on the CI's person.  Then the CI entered the

pharmacy, and provided $50 to the defendant, asking for prescription narcotics without

providing a prescription.  The defendant agreed, and provided the CI with 20 pills of 10

milligram Oxycodone, and 20 pills of 20 milligram Amphetamine/Dextroamphetamine,

not pursuant to any prescription.  During the discussion, the CI mentioned that the CI

was planning on quitting pain pills after the new year, and the defendant replied that the

defendant was happy the CI was quitting because the defendant worried about the CI.

On January 19, 2018, law enforcement conducted a second controlled purchase

from the defendant using the CI.  Before the transaction, the CI was searched, and

agents placed an audio recording device on the CI's person.  Then the CI entered the

pharmacy, and provided $150 to the defendant, asking for prescription narcotics without

providing a prescription.  The defendant agreed, and provided the CI with 30 pills of 10

milligram Oxycodone, and 30 pills of 20 milligram Amphetamine/Dextroamphetamine, and 30 pills of 1 milligram Lorazepam, a schedule IV anti-anxiety medication, not pursuant to any prescription.

On January 30, 2018, the CI met with agents and reported that the CI met with the defendant on January 29, 2018, in order to fill a legitimate prescription. During the meeting, the defendant discussed a scheme to avoid detection for providing prescription medications without prescriptions. The defendant stated that she was suspicious, having not heard back from her audit several months previously, and that she believed there could be an investigation. Therefore, the defendant told the CI that she would be requiring her customers to write their own prescriptions if they wanted more oxycodone. The CI told the defendant that the CI would not be able to get a legitimate prescription, and then the defendant took four blank prescription pages from behind the counter and showed the CI how to fill out a forged prescription. The defendant told the CI "don't worry, the doctor is dead and will never find out." The defendant filled out the prescription in the name of Frederick Eframo on one of the four prescription forms, and filled out the rest of the information for the CI, leaving the amount blank. The defendant told the CI to bring it back when the CI needed Oxycodone next, and to fill it out for 120 Oxycodone.

On February 13, 2018, law enforcement conducted a third controlled purchase from the defendant using the CI. Before the transaction, the CI was searched, and agents placed an audio recording device on the CI's person. The CI took the forged prescription form the CI had received from the defendant, and filled in the number of pills as 120 Oxycodone, as the defendant had previously instructed. Then the CI

entered the pharmacy, and asked the defendant for 120 Oxycodone for $200.  The defendant complained about the number of pills, and told the CI that the CI should try to "ween off" the pills, and that the defendant would only provide 30 pills to the CI, in exchange for $60.  The defendant also mentioned that due to the opioid epidemic that "they were watching her" and that the CI should put a different name on the forged prescription the next time.  The defendant provided the CI with 30 pills of 10 milligram Oxycodone, not pursuant to any valid prescription.

On April 12, 2018, agents executed search warrants at the defendant's home and at the St. Vrain pharmacy.  After a review of records recovered from the search warrant and other records of the defendant's activities, agents identified a number of drug-dispensing transactions which were clearly pursuant to false or invalid prescriptions, After the search warrants were executed, the defendant agreed to speak with the agents, and admitted to providing prescription medications to regular customers without prescriptions, but at first said that she would only do so if they had had prescriptions in the past and were allowed to have an emergency three-day supply. She also admitted that she took pills home or provided them to family members, and that there would likely be a discrepancy per month of around 50 to 150 Oxycodone pills. She admitted to providing other sorts of medications without prescriptions to customers who needed them.  She eventually admitted that she would provide pills to customers in anticipation of their later getting prescriptions, and that sometimes they would not later get prescriptions.

The total amounts of the narcotics distributed by the defendant in the controlled purchases, are:

Amphetamine (actual):  .9 grams
Oxycodone (actual):  .8 grams

The converted drug weight for these substances is 23.36 kilograms.

## VI.   ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. §3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters, which are in dispute.

A.   The base guideline is §§ 2D1.1 (a)(5) and (c)(7), with a base offense level of 16.

B.   The defendant is safety-valve eligible, and therefore receives a two-level decrease under § 2D1.1 (b)(17).

C.   The defendant receives a two level enhancement under § 3B1.3 for use of a position of public or private trust or a special skill for the crime, because she used her pharmacy license to obtain the controlled substances she distributed illegally.

D.   The parties agree that the defendant should receive a 3-level downward adjustment for timely acceptance of responsibility.

E.   The adjusted offense level therefore would be 13.

F.   The parties understand that the defendant's criminal history computation is tentative.  The criminal history category is determined by the Court based on the defendant's prior convictions.  Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be I.

G.   The career offender/criminal livelihood/armed career criminal adjustments would not apply.

H.   The advisory guideline range resulting from these calculations is 12-18 months.  However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 12 months (bottom of Category I) to 41 months (top of Category VI).  The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

I.   Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be $ 5,500 to $55,000 plus applicable interest and penalties.

J.   Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least 3 years, but not more than a life term of supervision.

The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. §3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. §3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory

11

guideline range, or above the advisory guideline range up to and including

imprisonment for the statutory maximum term, regardless of any computation or position

of any party on any 18 U.S.C. §3553 factor.

## VII.   ENTIRE AGREEMENT

This document states the parties' entire agreement.  There are no other

promises, agreements (or "side agreements"), terms, conditions, understandings, or

assurances, express or implied.  In entering this agreement, neither the government nor

the defendant has relied, or is relying, on any terms, promises, conditions, or

assurances not expressly stated in this agreement.


Date: 3/5/19

Mary Aronson
Defendant


Date: 3/5/19

Jon Banashek
Attorney for Defendant


Date: 3/7/19

Suneeta Hazra
Garreth Winstead
Attorneys for the United States